UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID E. BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. |
| DEPARTMENT OF VETERANS ) | 05-40027-FDS |
| AFFAIRS and THOMAS O'BRIEN, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION TO DISMISS**

**SAYLOR, J**.

　　This matter arises out of plaintiff's apparent inability to qualify for certain veterans' benefits in connection with his military service-related disability. Plaintiff David E. Brown, proceeding *pro se*, contends that defendants the Department of Veterans Affairs ("VA") and Thomas O'Brien (identified only as a "veterans service manager") violated the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Fifth and Fourteenth Amendments of the United States Constitution by failing to provide him full disability benefits. Among other things, he seeks a judgment declaring that 38 U.S.C. § 5313(a)(2), which was enacted as part of the Veterans' Disability Compensation and Housing Benefits Amendments of 1980, is unconstitutional. He also seeks injunctive relief and a reinstatement of his full disability benefits, retroactive to March 1, 2004.

　　The VA has moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted pursuant to Federal Rules of Civil

Procedure 12(b)(1) and 12(b)(6). For the reasons that follow, defendants' motion to dismiss will be granted.

**I.      Background**

The following are the relevant facts as alleged in plaintiff's amended complaint.

David E. Brown is a Vietnam veteran. He suffers from Post-Traumatic Stress Disorder ("PTSD"), apparently arising out of his military service, and is unable to maintain any gainful employment as a result. As of early 1998, he was receiving benefits from the VA at a 100% disability rate.

In July 1998, Brown was convicted in Massachusetts of two felony counts of assault and battery with a dangerous weapon and was incarcerated. Pursuant to 38 U.S.C. § 5313(a)(1), the VA reduced his disability benefits to a 10% disability rate during his imprisonment. Under § 5313(a)(2), Brown is entitled to a reinstatement of full disability benefits upon his release from incarceration, participation in a work-release program, or residency in a half-way house.[1]

Brown concedes that the VA's initial reduction in benefits was lawful. His claim is based instead on the work-release provision of § 5313(a)(2). He contends that because he is within 18 months of eligibility for parole, he is eligible to participate in a work-release program under

---

[1] Section 5313(a) provides in relevant part as follows:

(1) . . . any person who is entitled to compensation . . . and who is incarcerated in a Federal, State, or local penal institution for a period in excess of sixty days for conviction of a felony shall not be paid such compensation . . . for the period beginning on the sixty-first day of such incarceration and ending on the day such incarceration ends, in an amount that exceeds . . . [a reduced rate] . . . .

(2) The provisions of paragraph (1) of this subsection shall not apply with respect to any period during which a person is participating in a work-release program or is residing in a halfway house.

Massachusetts law.[2] However, he cannot participate in the program because of his disability, and because he cannot participate, he does not qualify for a full reinstatement of his benefits. Brown contends that his failure to receive full benefits under the circumstances is unlawful.

The complaint contains three counts: (1) an alleged violation of the Rehabilitation Act; (2) a *Bivens* claim against O'Brien; and (3) an alleged violation of the Fifth and Fourteenth Amendments. Brown seeks payment of his full disability benefits (retroactive to the date of his eligibility for work release) and injunctive and declaratory relief.

Brown concedes that the *Bivens* claim is improper and consents to its dismissal. The remaining claims are discussed below.

## II. Analysis

### A. Standard of Review

Defendants move to dismiss for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Although the motion is grounded in two different subsections of Rule 12, the standard of review is essentially the same. *See McCloskey v. Mueller*, 446 F.3d 262, 265-66 (1st Cir. 2006). Under either provision, the Court must construe the complaint liberally, accepting the plaintiff's well-pleaded facts as true and indulging all reasonable inferences therefrom. *See, e.g.*, *Dominion Energy Brayton Point, LLC v. Johnson*, 443 F.3d 12, 16 (1st Cir. 2006) (Rule 12(b)(1)); *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005)

---

[2] Defendants contend that Brown is ineligible for work release as a matter of Massachusetts law based on the crime he committed and the security level of the institution in which he is incarcerated. *See* Mass. Gen. Laws ch. 127, § 49; 103 Mass. Code Regs. 464.09; 103 Mass. Dep't of Correction Policies 101.03 (discussing security levels).

(Rule 12(b)(6)).[3]

The Court may relax the pleading standards somewhat for *pro se* litigants. *See, e.g.*, *Baxter v. Conte*, 190 F. Supp. 2d 123, 126 (D. Mass. 2001). Nonetheless, the Court is not the plaintiff's advocate and will not "conjure up implied allegations," *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979), in order to establish jurisdiction or to state an actionable claim. *Pro se* plaintiffs, like all parties, must "comply with the applicable procedural and substantive rules of law, and dismissal remains appropriate when the court lacks jurisdiction over the claims." *Overton v. Torruella*, 183 F. Supp. 2d 295, 303 (D. Mass. 2001). The party invoking federal jurisdiction shoulders the burden of proving its existence. *Aversa v. United States*, 99 F.3d 1200, 1209 (1st Cir. 1996); *Murphy v. United States,* 45 F.3d 520, 522 (1st Cir. 1995).

Where a party challenges the constitutionality of a statute on its face, and further factual development is immaterial to dispositive legal issues, a complaint may be dismissed for failure to state a claim under Rule 12(b)(6). *See Cook v. Rumsfeld*, 429 F. Supp. 2d 385, 387, 405 (D. Mass. 2006) (dismissal of a complaint for failure to state a claim under Rule 12(b)(6) is appropriate "where there are dispositive issues of law that bar the plaintiffs' claims even if they are able to prove the factual assertions made in the complaint.").

---

[3] The Court previously issued a stay of discovery pending resolution of the legal sufficiency of Brown's amended complaint. (Docket No. 32). Brown argues that by issuing a stay of discovery, the Court has prejudiced his ability to establish jurisdiction in this Court. However, the Court is required to construe the allegations in the light most favorable to plaintiff, and therefore it is irrelevant at this stage whether he has evidence to support his claims.

### B.     Judicial Review of VA Decisions

Congress has created a multi-tiered, comprehensive framework for the adjudication of veterans' disability benefits claims. *See generally* 38 U.S.C. chs. 5, 11, 51, 71, and 72. The process begins when a claimant files for benefits with a regional office of the VA. *See id.* at § 315 (establishing regional offices); *Beamon v. Brown*, 125 F.3d 965, 967 (6th Cir. 1997). A claimant may appeal the denial of a benefits claim or other adverse decision to the Board of Veterans Appeals ("BVA"). 38 U.S.C. § 7104. BVA decisions constitute final decisions of the Secretary. *Id.*

Those decisions are not subject to judicial review in district courts. *Id*. at § 511.[4] Instead, claimants may appeal BVA decisions *only* to the Court of Appeals for Veterans Claim ("CAVC"), an Article I court created by Congress. *Id*. at §§ 7251-52. The CAVC has exclusive jurisdiction to "decide all relevant questions of law, interpret constitutional, statutory, and regulatory provisions, and determine the meaning or applicability of the terms of an action of the Secretary." *Id.* at § 7261. An aggrieved party may then seek review in the Court of Appeals for the Federal Circuit, which reviews the CAVC decision "with respect to the validity of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter)." *Id.* at § 7292(a). The Federal Circuit has exclusive jurisdiction over appeals from CAVC. *Id.* at §

---

[4] Section § 511 provides in relevant part:

(a) The Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary to veterans or the dependents or survivors of veterans. Subject to subsection (b), the decision of the Secretary as to any such question shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise.

Subsection (b) provides for judicial review of benefits decisions, as described below.

7292(c).  Finally, parties may obtain Supreme Court review via petition for certiorari.  *Id.* at §
7291.

In anticipation of an adverse benefits decision by the Secretary, Brown has eschewed the entire administrative process in an attempt to manufacture jurisdiction in this Court.  His case is built on two faulty propositions:  first, that the administrative process does not permit adjudication of statutory and constitutional claims and is therefore "wholly 'inadequate' and 'futile,'" and second, that because he has not filed a "formal" claim for restoration of benefits, he is not requesting this Court to review any "decision of the Secretary," and he is therefore not precluded from seeking relief (including restoration of benefits) in this Court.

The Court will address each of Brown's substantive claims in turn.

C.      **Rehabilitation Act Claim**

Section 504 of the Rehabilitation Act provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, . . . be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency."  29 U.S.C. § 794.  By its terms, the Act applies to agency action, not to acts of Congress.  Accordingly, the Court will construe Brown's claim as a claim that 38 C.F.R. § 3.665, the VA regulation governing restoration of benefits to incarcerated veterans, violates the Rehabilitation Act.

That claim is plainly outside the jurisdiction of this Court.  Congress has provided an exclusive mechanism for such challenges to VA regulations:  to the extent the challenge is connected to a specific benefits claim, the claimant must proceed through the appeals process created by the Veterans' Judicial Review Act—first with the BVA, then CAVA, and finally, the

Federal Circuit.  Pub. L. No. 100-687, Tit. III, 102 Stat. 4105, 4113-4122 (1988) (codified in sections scattered throughout 38 U.S.C.).  All other challenges "shall be in accordance with [the APA] and may be sought *only* in the United States Court of Appeals for the Federal Circuit."  38 U.S.C. § 502 (emphasis added).[5]

Accordingly, no matter how Brown characterizes his claim, it is beyond the jurisdiction of this Court.  The Rehabilitation Act Claim will be dismissed.

### D.      Constitutional Claims

Brown fares no better with his constitutional claims.  He alleges that § 5313(a)(2) violates the Fifth and Fourteenth Amendments of the Constitution; in the absence of any claim against a state actor, the Court construes the claim as alleging a violation of the equal protection guarantee of the Fifth Amendment.[6]  To the extent Brown challenges § 5313(a)(2) as the VA has interpreted and applied it, § 511 bars his claim and it will be dismissed accordingly.  To the extent he makes a facial challenge to § 5313(a)(2), the complaint fails to state a claim upon which relief can be granted.

---

[5] In any case, the Rehabilitation Act does not provide a private right of action for claims of this nature.  Although the Act expressly provides a private right of action against the government as an *employer*, *see* 29 U.S.C. § 794a(a)(1), "the Act is silent about whether and how a person injured by the government as *regulator* is to enforce the Act against the government."  *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603, 605 (1st Cir. 1989) (Breyer, J.) (en banc) (emphasis added).  The First Circuit, interpreting that silence, has determined that Congress intended for aggrieved parties generally to enforce Section 504's substantive standards through the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*.  *Cousins*, 880 F.2d at 605.

[6] Although the Fifth Amendment does not explicitly contain a guarantee of "equal protection of the laws," the equal protection mandate is applicable to the federal government via the Fifth Amendment's Due Process guarantee, which generally is interpreted coextensively with the Fourteenth Amendment's Equal Protection guarantee.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954); *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993).

**1. As-Applied Challenge to § 5313(a)(2)**

Congress has empowered the Secretary of Veterans Affairs to decide constitutional challenges to the application of the veterans benefits laws. Section 511(a) provides that the Secretary "*shall* decide *all questions of law and fact* necessary to a decision . . . under a law that affects the provision of benefits by the Secretary." (emphasis added). *See Hicks*, 961 F.2d at 1369; *Hall v. U.S. Dep't of Veterans' Affairs*, 85 F.3d 532, 534 (11th Cir. 1996) (noting that claimants may pursue constitutional challenges, including facial attacks on statutes, within the VJRA framework).[7]

Furthermore, that grant of authority to the Secretary is exclusive, with certain narrowly defined exceptions. *See* 38 U.S.C. § 511(a) (the Secretary's determinations of such issues "shall be final and conclusive and may not be reviewed by any other official or by any court, whether by an action in the nature of mandamus or otherwise."). The only relevant statutory exceptions to this bar on judicial review are challenges to Department rules, *see* 38 U.S.C. § 502 (establishing review in the Federal Circuit), and the specific appeals process outlined above, *see* 38 U.S.C § 511(b)(4).[8] And the only other exception is that the District Courts retain jurisdiction to hear

---

[7] As stated in the House report accompanying the VJRA:

> As revised, the first sentence of section 211 [recodified as § 511 by the Department of Veterans Affairs Codification Act, Pub. L. No. 102-83, § 2(a), 105 Stat. 378, 388 (1991)] imposes a duty upon the Administrator to resolve all legal and factual questions which are necessary to a decision in a case. Thus, if a veteran alleges that a statute is unconstitutional, that VA procedure deprives him or her of due process of law, or that a VA regulation is inconsistent with a later-enacted statute, the Administrator must take a position with respect to such a contention if it is necessary to a decision in a case. By requiring the Administrator to rule on such challenges, the Administrator is fairly apprised of a matter which may become the subject of further judicial review and may reformulate or clarify the position of the agency on the particular question.

H.R. REP. NO. 100-963, at 27 (1988), *as reprinted in* 1988 U.S.C.C.A.N. 5782, 5809.

[8] There can be little doubt that the VJRA was intended to limit the scope of judicial review. For example, whereas the predecessor statute prohibited judicial review of VA decisions "under any law administered by the


facial constitutional challenges. *See Larrabee*, 968 F.2d at 1501 ( "[a]lthough district courts continue to have jurisdiction to hear facial challenges of legislation affecting veterans' benefits, other constitutional and statutory claims must be pursued within the appellate mill Congress established in the VJRA") (citation and internal quotation marks omitted); *Zuspann v. Brown*, 60 F.3d 1156, 1158 (5th Cir. 1995) ("To determine whether the district court correctly dismissed this case under § 511(a), we ask one question:  whether the plaintiff is alleging a facial attack on the constitutionality of an act of Congress, or whether the plaintiff is challenging the VA's decision to deny him benefits."); *Beamon*, 125 F.3d at 972 -73.  *But see Hall*, 85 F.3d at 534 (even the proposition that district court may entertain facial challenges to benefits statutes is "debatable.").

Brown attempts to circumvent this scheme in two ways.  First, he contends that the administrative process does not allow for review of constitutional claims, and therefore this Court should permit a constitutional challenge.  As described above, Brown is simply incorrect.

Next, he contends that because he filed only an "informal claim" no claim is presently before the Secretary.  Accordingly, he argues, he does not seek review of any decision of the Secretary, and therefore § 511 does not bar his claim.

Even assuming that Brown made only an "informal" claim, *see* 38 C.F.R. § 3.155, and that the Secretary made no decision on that claim (the record is unclear at this stage), his argument is obviously unpersuasive.  Congress has created a complex benefits system and deemed the Secretary the sole arbiter of benefits claims and the factual and legal issues that arise in connection

---

Veterans' Administration providing benefits," the amended statute prohibited review of VA decisions "under any law that *affects the provision* of benefits by the Secretary."  *Compare* 38 U.S.C. § 211(a) (1974) *quoted in Johnson v. Robinson*, 415 U.S. 361, 366 n.5 (1974) *with* 38 U.S.C. § 511 (2005) (emphasis added).  In the words of the Second Circuit,  "Congress intended to obviate the Supreme Court's reluctance to construe the statute as barring judicial review of substantial statutory and constitutional claims, while maintaining uniformity by establishing an exclusive mechanism for appellate review of decisions of the Secretary."  *Larrabee v. Derwinski*, 968 F.2d 1497, 1501 (2d Cir. 1992) (citations omitted).

with those claims. *See* 38 U.S.C §§ 303, 501, 511. Furthermore, the VJRA requires exhaustion of administrative remedies before any form of judicial review is available. *See* 38 U.S.C. § 7252 (granting jurisdiction to review BVA decisions); *Mokal v. Derwinski*, 1 Vet. App. 12, 15 (1990) (denying review of claim prior to decision from BVA).[9]

Under the circumstances, Brown simply cannot bypass the administrative scheme by using the declaratory judgment procedure for a benefits-related claim. *See United Public Workers of Am. (C.I.O.) v. Mitchell*, 330 U.S. 75, 118 (1947) ("The declaratory judgment procedure may not, of course, be used as a substitute for other equitable remedies to defeat a legislative policy or to circumvent the necessity of exhausting administrative remedies.") (citation omitted); s*ee also Mitchum v. Hurt*, 73 F.3d 30, 34 (3d Cir. 1995). Accordingly, to the extent his claim raises an as-applied challenge to the administration of § 5313(a), his claim will be dismissed.

---

[9] The Supreme Court has previously rejected a plaintiff's attempt to circumvent exhaustion requirements by preempting an agency decision with a declaratory judgment action. *See Heckler v. Ringer*, 466 U.S. 602 (1984). Although the jurisdictional statute in *Ringer* differed in important ways, the Court's reasoning is instructive.

*Ringer* involved judicial review of agency decisions under the Medicare Act. Review of reimbursement claims arising under the Medicare Act is available only after the Secretary of Health and Human Services renders a final decision on the claim. *See id.* at 605 (discussing 42 U.S.C. § 405(g)). One of the plaintiffs in *Ringer* argued that because he had not yet filed a claim with the Secretary, the exhaustion requirements did not apply, and he could immediately seek declaratory relief establishing a right to future benefits should he decide later decide to file a claim. *Id.* at 621. The Supreme Court rejected this argument, reasoning that to do otherwise would "allow claimants substantially to undercut Congress' carefully crafted scheme." *Id.* The Court construed the exhaustion requirement as requiring presentment of the claim to the agency in the first instance. *See also Whitney National Bank in Jefferson Parish v. Bank of New Orleans & Trust Co.*, 379 U.S. 411, 422 (1965) (Where Congress "has enacted a specific statutory scheme for obtaining review," the doctrine of exhaustion of administrative remedies "requires that the statutory mode of review be adhered to notwithstanding the absence of an express statutory command of exclusiveness.").

**2.    Facial Challenge to § 5313(a)(2)**

As noted, this Court does have jurisdiction to entertain a facial constitutional challenge to 38 U.S.C. § 5313(a)(2). The Court will construe Brown's equal protection claim as arising under the Fifth Amendment's Due Process Clause. Section 5313(a)(2) provides that the reduction in benefits during incarceration "shall not apply with respect to any period during which a person is participating in a work-release program or is residing in a halfway house." Brown apparently contends that the statute violates the Fifth Amendment on its face because it irrationally discriminates against incarcerated veterans who qualify for work release, but whose disability prevents them from participating.

The constitutional principle that "no person shall be denied the equal protection of the laws must coexist with the practical necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." *Romer v. Evans*, 517 U.S. 620, 631 (1996). In order to "reconcile the principle with the reality," the Supreme Court has applied a heightened standard of review to statutes that implicate a fundamental right or apply a suspect or quasi-suspect classification; all other legislative classifications are upheld so long as they "bear[] a rational relation to some legitimate end." *Id.* (citing *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)); *see also Beach Communications*, 508 U.S. at 313 ("Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.")

Section 5313 implicates no fundamental right. *See Disabled American Veterans v. U.S. Dep't of Veterans Affairs*, 962 F.2d 136, 142 (2d Cir. 1992) (veterans benefits not a fundamental right for purpose of equal protection). Nor does it apply a suspect or quasi-suspect classification.

11

*See, e.g.*, *Brown v. New Mexico State Personnel Office*, 399 F.3d 1248, 1255 (10th Cir. 2005) (disabled persons not a suspect or quasi-suspect classification; rational-basis review applies) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 442-46 (1985)); *Brown v. North Carolina Div. of Motor Vehicles*, 166 F.3d 698, 706 (4th Cir. 1999) (disability classifications measured by rational-basis review). Accordingly, the Court determines only whether the classification—those eligible for work-release—is rationally related to a legitimate government end.[10]

      The government need not actually articulate the reason for the classification—any conceivable set of facts that could rationally justify the classification provides a sufficient constitutional foundation for the statute. *See Heller*, 509 U.S. at 320. Viewed in this light, restoring benefits to veterans participating in work release easily passes constitutional muster. Work release is one of the tools to assist in rehabilitating incarcerated populations in preparing to re-enter society. *See, e.g.*, 103 Mass. Code Regs. 464.01 (purpose of work-release program is to "help facilitate [the prisoners'] successful reintegration into the community"). Congress may reasonably wish to provide an incentive to participate in such programs, which normally require good behavior as a condition for eligibility. *See, e.g.*, *id*. at 464.09 (outlining requirements for approval of participation in work release). Providing an incentive for good behavior and rehabilitation is a legitimate government end. Those unable to participate in work-release by reason of their disability, because of the nature of the crime committed (as appears to be the case for Brown, *see supra* note 2), or any other reason, are not susceptible to this particular incentive

---

[10] The parties apparently agree that this is the appropriate standard. Brown contends that the classification is "irrational bearing no relationship to . . . [a] legitimate Government end." (Compl. ¶ 2).

structure, and Congress may therefore rationally exclude them from restoration of full disability benefits.

The notion that some veterans will be excluded from this incentive solely because of the severity of their disability, while unfortunate, is far from sufficient to overcome the presumption of constitutionality the statute carries. *See Heller*, 509 U.S. at 319 (a "classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity."). Under rational-basis review, "courts are compelled . . . to accept a legislature's generalizations even when there is an imperfect fit between means and ends." *Id.* at 321.

The Court concludes that the statute easily passes rational-basis review, and accordingly, Brown has failed to state a claim upon which relief can be granted. *See Cook*, 429 F. Supp. 2d at 407 (dismissing facial equal protection challenge under Rule 12(b)(6) where statute met rational-basis test).

### III.     Conclusion

For the foregoing reasons, the Court does not have subject matter jurisdiction over Brown's claims under the Rehabilitation Act or his as-applied challenge to the constitutionality of 38 U.S.C. § 5313(a)(2).  His facial constitutional challenge to 38 U.S.C. § 5313(a)(2) fails to state a claim upon which relief can be granted.   Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1) and (6), the complaint is DISMISSED.

**So Ordered.**

                                                /s/ F. Dennis Saylor
                                               F. Dennis Saylor IV
Dated: September 11, 2006                 United States District Judge